Will the clerk please call the first case? 2230104 W.C. Smithfield Foods, Inc. Appley v. Illinois Workers' Compensation Comm'n. Alfredo Garcia, Appellant. Andrew Kriegel is the attorney for the appellant. Steven Jacobson, attorney for Appley. Mr. Kriegel, you may proceed. Good morning, Justices. Andrew Kriegel. Good afternoon. Good afternoon. I apologize. Good afternoon. Andrew Kriegel here on behalf of the appellant, Alfredo Garcia. Just a little background about this case. This appeal stems from a workers' compensation case filed by Mr. Garcia against his employer, Smithfield Foods, following a March 15th injury. Mr. Garcia had worked at Smithfield Foods for over 10 years as a raw utility worker. The job duties, he needed to know everything at the manufacturing level, and it was really a catch-all position where he would set up grinders in the manufacturing warehouse and load boxes, drive forklifts. These grinders would weigh between 500 and 800 pounds. These boxes he would load onto conveyors, which would be flipping them and pushing them would weigh 60 pounds, and he would push over, as the commission noted in its decision, over 900 pounds of boxes each shift he was assigned that position. The case was originally tried, pursuant to Section 19B, based on the employer's denial of a work injury. Mr. Garcia had alleged this work injury. He reported the accident to his supervisor. I don't think there's any dispute about that. He was sent to the company clinic, the in-house company clinic, which documented a work-related injury. From there, he was sent to an occupational medicine clinic. An MRI was ordered, and he had this MRI. It is true that Mr. Garcia had a history of some shoulder symptoms. However, as the commission pointed out, he was not treating for any injury prior to this March 15th work accident. He was working full duty, and there's no reference in the medical records about any treatment recommendations for the right shoulder until after the injury. The commission found that Garcia sustained this work-related accident on the alleged date, and the condition in his right shoulder was causally related. And based on the medical records of his treating orthopedist, Dr. Succi, who stated he was a awarded the prospective medical after finding causation. Following that, the employer filed a review to the circuit court of King County. Judge Bush reversed the commission's decision as it being against the manifest weight of the evidence. There was no written order by Judge Bush prepared, but he did state his findings on the record. And he stated that based on his interpretation, he found that the commission's decision was clearly erroneous to rely on the report because it was not subject to cross-examination, not offered within a reasonable degree of medical certainty, and therefore against the manifest weight of the evidence. There is, in my opinion, a couple problems with that reasoning. The first being, this was not a report. This was a medical record from Dr. Succi. So under section 16 of the act, this comes in. And second, the circuit court judge substituted himself in place of the fact finder here, which was the commission. The commission found that the petitioner, Mr. Garcia, proved by a preponderance of the evidence that he sustained a work-related injury on this alleged date. I think first we have to look at what does this mean? A preponderance of the evidence is more likely than not. So did the commission have sufficient evidence to find that more likely than not, Mr. Garcia sustained this work-related injury? It's not could a different court rule differently, which could happen. There is competing evidence here. I don't think there's any dispute about that. The question I think that needs to be answered is, does the commission have evidence to support its finding? And here I believe it does. The commission, in a unanimous, detailed decision, found there was enough evidence to report that. The answer from this appellate court, I believe, should be a resounding, yes, there is enough evidence to support the commission's finding. Some things the commission notes are Mr. Garcia reported the injury to his supervisor on the date it happened. He was working full duty prior to the alleged work-related injury. There were work restrictions imposed following the injury. The medical records from Tyler Medical Services document a work-related injury. The medical records from the in-house company clinic document a work-related injury. And then the commission relied a lot on Dr. Suchi's interpretation of the MRI, which he found there to be a traumatic tear, which was directly related to work. The commission specifically addresses Dr. Suchi's opinions and found they were more persuasive than Dr. Neal, respondent section 12 examiner. Again, this is a medical dispute and the commission has the province of deciding these disputes. One fact the commission looked at specifically was Dr. Neal did not actually review any MRI films. So he really doesn't have a basis to opine about what the MRI shows. The big thing I think the circuit court got wrong in its analysis here is its complete disregard of section 16 of the act. Section 16 of the act starts out by saying the process and procedure before the commission shall be as summary and reasonably may be. That's why these rules are in place. The intent of section 16 is to streamline the evidentiary process before the commission. It specifically states that the records submitted into evidence that are certified pursuant to subpoena are sufficient proof of the matters therein. This doesn't mean that the opinions in those records are conclusive, but the medical evidence in those records is sufficient proof of that. And the commission does have the right to rely on that. For the court to disregard the act and unilaterally reverse a unanimous factual decision due to what it called a lack of deposition testimony from Dr. Suchi is clearly improper. It's wrong and it should be reversed by this court. For those reasons, just as we ask that this case be reversed, the commission's decision be reinstated in its entirety and the case be remanded back to the commission for further proceedings. Questions from the bench? No? Okay, thank you. Thank you, counsel. Mr. Jacobson, you may respond. Yes, good afternoon. My name is Steve Jacobson. If it may please the court, I'm here today to ask the court to affirm the judgment of the circuit court, which vacated the commission's decision and reinstated the original arbitration decision that denied benefits in this case. It's our position that the commission wrongly relied upon Dr. Suchi's statement of opinion in this case. Dr. Suchi did not testify. He did not author a narrative opinion report. And so the only thing that the commission was left with was a one-sentence statement of causation in one of his office visit notes. And that statement was invalid because it lacked a foundation, particularly where you have a repetitive trauma theory of recovery. And I just want to emphasize that in this case, we proceeded to trial on a repetitive trauma theory of the case. And the arbitrator's decision and summary of the facts make that clear. In this case, Dr. Suchi did not document anything to indicate that he had any understanding of the employment activities at issue. There's nothing in the medical records or in the evidence that tells us if he ever saw a job video analysis or if he saw any photographs of the work environment and the equipment used. There's no evidence that he saw a job description. The only thing that is documented about the job activities is four or five words, which says pushing and pulling grinder pieces. Well, counsel, counsel, can't we deduce from the evidence that's before us that Dr. Suchi, who placed the claimant on work restrictions, had some type of relatively detailed conversation about what type of work activity the claimant would have had to have been involved in? I mean, can't we assume that? I think it's improper to assume because that would be engaging in speculation. Yeah, I was going to retract the word, but you understand my question. Yeah. The other point is that at trial, Mr. Garcia never described any conversation that he had with a doctor. So how do we know what the doctor knew or did not know? We don't know what the doctor assumed or did not assume. And with regard to any assumptions he made, we don't know if Dr. Suchi's assumptions were false in any respect. Yeah, we do know a history was given and that the doctor ordered the shot, placed work restrictions, and basically treated the claimant based upon this oral history of what he did and what had occurred. The only thing that he described was, according to Dr. Suchi, pushing and pulling grinder pieces. There's nothing about weight. There's nothing about frequency or duration. What did Dr. Suchi conjure in his mind when he was visualizing what Mr. Garcia was doing? Was Mr. Garcia pushing and pulling grinder pieces all day long for an eight-hour shift? Were these grinder pieces heavy or light? Was it every two minutes or three minutes or 15 minutes or half an hour that he was pushing and pulling these pieces? There's nothing to indicate that he was ever made aware that it was a setup process done only in the morning or at the beginning of the shift, and there's nothing to indicate that it was only three grinders that were set up. You seem to be asking us to re-weigh what little information Dr. Suchi had in sort of a, well, not a manifest weight context. Isn't it for the commission to make these determinations? That presupposes that you have a valid foundation in the first place. And my contention, Your Honor, is that the statement of causation is lacking a necessary foundation. And I cited the growth decision in my brief, and that decision sets forth the proposition that there must be underlying facts that are disclosed to the prior fact so that we know what the bases of the expert's opinion are. If you don't know what the bases of the opinion are, then you don't know, you don't have no reliability to assess whether the opinion is worthy of giving it any weight. So that's why— Well, Mr. Jacobson, this is a repetitive trauma case. So there was testimony even by the claimant as to the nature of the actions that he was doing in his job, right? Well, yes, but those jobs, he had six different job assignments. So every week was a different job. He rotated. Some of those jobs involved driving a forklift, which did not involve any use of the upper extremities at all. And then the setup work that he described was sliding an auger into a grinder. And as the arbitrator pointed out, the augers were suspended by a crane, and there was no weight distributed to the employee. And there's a handlebar. And there's nothing to indicate that Dr. Succi had any knowledge of the ergonomics involved. There's nothing, there's no overhead motion here. So what did Dr. Succi say? He just said, well, in the initial evaluation, he just points out the history that Mr. Sia reported. He had been there for 10 years and engaged in repetitive motions and then added the phrase pushing and pulling grinder pieces. There's nothing about the other jobs that he did. That's all that Dr. Succi documented. And it's all that we, this court has to go off of. That's all that the commission had to rely upon. And there's no foundation for us to draw any conclusions as to the reliability of that cases are. And then the commission. Well, the doctor, okay, let's look at the medical condition of the claimant. How was that? How was that diagnosis presented to the fact finder? Well, there's multiple diagnoses here. There is an MRI, and the MRI never say anything about any acute injury. The rotator cuffs were intact. There was no tears whatsoever. The MRI report said that the labrum was macerated. It also said that it was diffuse. So those are signs of age related wear and tear. And as Dr. Neal testified to, he does not agree. I mean, he does not disagree with the radiologist found. So there's no reason for him to review the films because he assumed that the radiologist got it right. And Dr. Succi did not contradict that when he gave his original diagnoses. It was only in the third office visit note when Dr. Succi becomes aware that approval hasn't been given, that an MRI was performed. And he, in passing at the very end of the office visit note, just says, this is causally related. And then he says, it's acute. But that contradicts the previous histories about repetitive motion over 10 years. When Mr. Garcia first goes to the in-house clinic, he says, right shoulder discomfort ongoing for nine months. And that's page 261 in the record. And there's no description of any sudden precipitating event or sudden trauma. And then when you go to Dr. Succi's initial evaluation, which is page 284 in the record on appeal, it says, patient presents for a right shoulder, which has been ongoing since June of 2020. He's been with the company for 10 years with repetitive motions. There's no description of any sudden accidental event or trauma or injury. And I'd like to add that recognizing the problems with the case, Mr. Garcia's attorney is now trying to convert this case from a repetitive trauma case to a sudden accident case. And if you look at his reply brief on page six, he writes, and I quote, give me one second, the evidence demonstrates the work accident is not related to a repetitive trauma. And that Garcia is sustained a work-related injury on March 15 of 2021. But if the theory of recovery is not repetitive trauma, and if on the first time on appeal, he's now switching to a new theory of recovery, that this is a sudden accident, then I'll ask the court to point in the record, where is there an identifiable mechanism of injury that correlates with the shoulder joint? When we look at the frozen food position, where he's flipping boxes, I could see how that could cause a wrist and hand injury, but there's no lifting involved. The shoulder joint is not involved because there's a button that he presses that lowers and raises the boxes. He just simply turns them upside down, empties the meat onto a conveyor, and the conveyor transports it away. With regard to the second position that he's talking about, when we look at the setup process where he guides the augers into the grinders, again, there's nothing there that's being done that correlates with the shoulder joint, because the handlebar is at chest level. He's pushing it forward, and he's simply sliding in an object that's on wheels and is suspended from above into the hole, and you can see the photographs in the Record on Appeal where we have pictures of this grinder, and we have a picture of an employee who's sliding it in, and there's no overhead activity here. So, what is the identifiable mechanism of injury that correlates with the shoulder joint? The commission was very vague and overly broad in their findings of fact. All they set forth was that he experienced pain on the job, but a manifestation of pain is not the same as a cause and effect. There are millions of Americans with pre-existing conditions or injuries or ailments or arthritis, and they go to work, and they do the best they can, and they feel pain at work, and they just bear with it. But just because you have pain at work doesn't mean that that is the cause of the condition, and there's not enough evidence here to causally relate any condition of the shoulder to what he was doing at work. The Record is devoid of that kind of evidence that's needed to draw any kind of a reasonable, rational basis for finding causation. The petitioner had the burden of proof, and the burden was not met in this case. And regarding the chain of events argument that we made, because this was presented as a repetitive use theory, the case law was clear, and I pointed to the decision authored by Justice Holdridge in University of Illinois v. Commission and Clyde Gumm, where the court said that you cannot utilize a chain of events analysis for inferring causation in a repetitive theory claim where there's evidence of a pre-existing condition. And in this case, we know that he has a thyroid disorder. We know that Dr. Suchi was never told about the thyroid disorder. Mr. Garcia admitted he never told Dr. Suchi about the thyroid disorder. And when asked, why did you only tell the IME doctor, he said, because he asked me. And the commission got it wrong when they said that Dr. Neal, the IME doctor, his opinion about the thyroid disorder was not supported by the record, because the records don't show that. But they do, because we introduced into evidence the primary care doctor's records that document active, ongoing treatment for thyroid disorder. Can I ask a question? Yeah. Generally, when the commission rules on repetitive trauma cases, don't they say that he sustained an accidental injury that manifested itself on such and such a day? Yes. And in this case, they didn't really say that. They just said he had pain on such and such a day. No, no. They said in about four different locations in their opinion that he sustained an accident arising out of in the course of his employment on March the 15th, 2021. Didn't say it manifested itself. They said he sustained the accident on that day. So, I mean, I understand that the arbitrator kept calling it a repetitive trauma case, but nowhere in the commission's decision is it referred to as such. And that's why I was alluding to what is the identifiable mechanism of injury for a sudden traumatic event. The records don't say that. The records document repetitive motion. And the flipping of the boxes only involves the wrists and the hands. And the sliding of the auger into the grinder involves pushing a handlebar. So, the commission never identifies what is the exact mechanism of injury that it relied upon. They just say he had pain while at work. And as the University of Illinois decision that I cited talks to, even though that dealt with repetitive trauma, it did talk about how correlation is not the identical or same thing as cause and effect. And I think that applies to equal force when you're alleging a sudden traumatic precipitating event or trauma. If you're having pain at work, it's because the employee associates or correlates something at work with this condition. It doesn't mean it's related. Well, what you're simply saying, you're red lights on, is that there is nowhere in the record that there's a sudden traumatic event, correct? Correct. Okay. Okay. Any questions from the bench? Yeah, I'll take a stab at it. Pardon the expression, but you would agree that Dr. Sushi noted there was a direct cause, a relationship between the work injury and the development of this tear. That's there, is it not, in his opinion? That is in the records. It's there. It's merely the lack of supporting information in which you take issue with. Yes, because if we're going with repetitive trauma theory, he doesn't know what the employment entailed. And if we go with a sudden traumatic event, Dr. Sushi didn't discuss what that was. It's not in those records either. So, you're saying the record generally is void of a work injury under either theory of recovery. Correct. It's just insufficient documentation, which is why it was imperative to get a narrative opinion report or to oppose the doctor. If you request a narrative opinion report, you could consider the following hypothetical facts. This is what the patient alleges. What do you think? Because your history doesn't show that. But there's nothing in the records that suggests that the doctor's patient didn't give a history as a part of the treatment. It's speculative. We don't know what was said or was not. That's not my. That's a conclusion. That's that doesn't answer my question. I agree. I'm sorry, the point is that there's evidence of an appointment and examination and a history given and the doctor making these findings that those things are all present and those are things the commission considered. Right. And but we don't know. Did Garcia say that these grinders are 400, 500 pounds because they're weightless when they're suspended? We're making assumptions as to what he told Dr. Suchi. We just don't know. I didn't make those assumptions. I just asked that question and I think I think the answer was in the affirmative. But I suppose you're free to explain. Yeah, that was that was my whole point, your honor, is that which Dr. Suchi did say or provide an opinion, as you noted. I'm just saying there's no foundation for it. Thank you, counsel. Mr. Creagle, you may reply. Yes, I'd just like to reply. Reply briefly, justices. On this date of alleged accident, petitioner testified he noticed a sharp, heated pain in the shoulder. He reported this to his supervisor. The record's clear on that. The supervisor, I think, even concedes that he was told about, hey, I have pain in my shoulder. And that's why petitioner was sent to the company clinic. He gives a history to the company clinic. The company clinic says this is related to work. He goes to Tyler Medical Services, gives a history. And then he goes to Dr. Suchi and gives a history about his job. And Dr. Suchi looks at an MRI, finds a traumatic tear of the labrum that he directly relates to work. We have an opinion from Dr. Suchi gave this opinion in his medical records. The commission is entitled to rely on this for the employer to argue that, well, we don't know what he told Dr. Suchi about the weight of this auger. We don't know what he told him about how often he does that. Dr. Neal talked about that. The trial transcript talks about the weight of that auger. And the commission takes all of this information that it has all the evidence, weighs the facts and then makes this decision. What the respondent employer here is asking to be done and ask the circuit court to be done, which we believe got this wrong, was reverse a factual determination from the commission. And we'd ask that the commission's decision be reinstated. And I have nothing further unless your honors have questions. When did you switch your theory of recovery? I don't think we ever switched our theory of recovery, your honor. We alleged there was a work related accident on this March 15th date. And, you know, we're not saying petitioner did not have a prior symptoms in the shoulder. But I don't think the analysis is or the analysis is just because someone has prior. Well, tell me what the acute discrete accident was on that day. Well, he was setting up the grinders and flipping these boxes all day. And that's what he reported. This is a specific incident. This isn't just your body wearing out over time. He's doing this physical, heavy work. And I think, you know, pushing, flipping the 60 pound boxes, this isn't. So now we're moving into repetitive right now, your explanation. We went from on that date, he was doing this and reported an injury, correct? Yes, he was setting up these augers and flipping the boxes. So that's when it all happened. Yes, he had symptoms before, but this is, this is new. This happened on that date. And so why are we talking about what he did before? Well, I think it's relevant. Why is it relevant to an acute specific injury? I think the fact that he did have shoulder problems before needs to be brought up to this court. I, you know, to say this brought up by the employer. Well, I, I like to front these issues. If I acted like my client had no symptoms ever and never complained of anything in the past, I think that'd be a bit disingenuous. He did have symptoms in the shoulder, but he wasn't treating for them. And he didn't have any MRI and no treatment recommendations. So just because someone has some pain doesn't mean they are actively treating and that's what the situation is here. Any questions from the bench? Further questions? Okay. Thank you. Thank you, counsel, both for your arguments in this matter.